IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Susan Marie Oakey,**<br><br>Plaintiff,<br><br>v.<br><br>**Nancy A. Berryhill,**<br>**Acting Commissioner of Social Security,**<br><br>Defendant. | CASE NO. 16cv1112 WQH (PCL)<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE:**<br><br>**DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. 10); and**<br><br>**GRANTING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT (Doc. 14.)** |

**I.**

**INTRODUCTION**

Plaintiff seeks judicial review of Acting Commissioner of Social Security's final decision denying Plaintiff's application for disability insurance benefits. (Doc. 1.) Plaintiff filed a Motion for Summary Judgment (Doc. 10), and Defendant filed a Cross-Motion for Summary Judgment (Doc. 14). The Honorable William Q. Hayes referred the matter to the undersigned judge for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After a thorough review of all pleadings and the entire record submitted in this matter, this Court recommends that Plaintiff's Motion for Summary Judgment be **DENIED** and that Defendant's Cross-Motion for Summary Judgment be **GRANTED**.

## II.
## BACKGROUND

**A. Procedural Background**

Plaintiff Susan Oakey filed an application for Disability Insurance Benefits and Supplemental Security Income on September 2, 2011, alleging an inability to work beginning April 6, 2010 due to back problems and a shoulder tear. (A.R. 19-21.) On June 2, 2014, the ALJ found that Plaintiff remained capable of performing her past relevant work as an administrative clerk and insurance clerk and thus was not disabled within the meaning of the Social Security Act. (A.R. 19-26.) On March 15, 2016, the Appeals Council denied review of the ALJ's decision, making that decision the final decision of the Commissioner. (A.R. 1-7.) On May 9, 2016, Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g). (Doc. 1.) Defendant answered on July 26, 2016. (Doc. 8.) Plaintiff filed a Motion for Summary Judgment (Doc. 10), and Defendant filed a Cross-Motion for Summary Judgment in Opposition to Plaintiff's Motion for Summary Judgment (Doc. 14). In her motion, Plaintiff argued that the ALJ failed to articulate specific, clear and convincing reasons for deeming Plaintiff's subjective pain testimony not fully credible. (Doc. 10.) In Defendant's motion, the government argued that the ALJ made specific credibility findings regarding Plaintiff's subjective testimony that are supported by substantial evidence. (Doc. 14-1, at 3.)

This Report and Recommendation addresses both motions pending before this Court.

**B. ALJ's Decision**

The ALJ sought to determine whether Plaintiff was disabled under the Social Security Act. (A.R. 19.) The ALJ found that Plaintiff had not engaged in substantial gainful activity since April 6, 2010, the alleged onset date. (A.R. 21.) The ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, cervical spondylosis without

myelopathy, bicipital tendinitis, and right shoulder rotator cuff tear. (A.R. 21.) The ALJ stated that Plaintiff's left hip pain was minimal and nonsevere based on CT scan dated March 9, 2006. (A.R. 21.) Based on her impairments, the ALJ found that Plaintiff had the residual functional capacity to perform less than a full range of light work, except that Plaintiff can stand and walk for four hours of an eight-hour workday and sit six hours of an eight-hour workday with the option to sit or stand at her convenience and comfort for no more than one or two minutes at a time to relieve pain; can frequently balance, stoop, kneel, crouch and crawl; can never climb ladders, ropes, or scaffolds; can perform occasional reaching overhead with bilateral upper extremities; and should avoid workplace hazards, such as dangerous machinery and unprotected heights. (A.R. 22.)

The ALJ stated that Plaintiff's longitudinal medical history of low back pain was not necessarily consistent with her allegation of disability. (A.R. 22.) The ALJ stated that Plaintiff injured her back in July 2008 after she slipped and fell. The ALJ stated that Plaintiff received epidural steroid injections from December 2008 to January 2009 and was able to continue working. (A.R. 22.) On January 25, 2010, a back evaluation was performed at Associated Physical Therapy that reported Plaintiff was doing well. (A.R. 22.) Plaintiff was reportedly discharged on March 7, 2011 from physical therapy because her progress was good and she felt better. (A.R. 22.)

On March 29, 2011, a pain management doctor performed a consultative evaluation of Plaintiff due to her having ongoing mid-back pain, buttock pain with tingling in her bilateral thighs and sharp stabbing pain in her right foot after a nerve ablation procedure. (A.R. 23.) Although Plaintiff reported no pain when lying down or driving a car, she reported pain after performing activities. (A.R. 23.) Plaintiff was referred to undergo a diskogram procedure to assess whether she should undergo a lumbar disk replacement or fusion. (A.R. 23.) On April 28, 2011, Douglas Dobecki, Jr., M.D., said an MRI of the lumbar spine revealed L4/5

spondylolisthesis with facet arthrosis, disc bulge and ligament hypertrophy at the L5/S1 and left par central disc bulge. Dr. Dobecki diagnosed Plaintiff with intervertebral disk disorder without myelopathy, low back pain, and degeneration of the lumbar disc. Dr. Dobecki suggested Plaintiff follow up with acupuncture treatments and prescribed Cymbalta medication for pain. (A.R. 23.)

The ALJ noted that Plaintiff was seen at the Naval Medical Center of San Diego on September 16, 2011 after she was rear-ended while backing out of her driveway. (A.R. 23.) In x-rays taken after the accident, there was no grossly displaced fracture and bone mineralization was normal. Although there were some degenerative changes of the cardiothoracic spine, most conspicuous at C5-6 and C6-7, there was no significant bone or joint abnormality. (A.R. 24.)

On July 11, 2012, a physical therapist from Associated Physical Therapy reported that Plaintiff demonstrated improved spinal mobility of the lumbar spine and reported telling Plaintiff to continue physical therapy to increase her range of motion and strength. (A.R. 23.) In August 2012, the results from an MRI of the lumbar spine revealed that the lumbar vertical bodies were normal in height, mild disc space narrowing and desiccation at the L5-S1, mild circumferential disc bulging at the L4-5 and mild bilateral neural foraminal narrowing. (A.R. 23.) The report noted that the lumbar spondyloarthropathy had progressed since the prior MRI report of the lumbar spine. (A.R. 23.)

A lumbar spine examination was performed on February 6, 2013 with Paul Marshall, D.C. He reported that Plaintiff's sensory examination of the upper and lower extremities was within normal limits. Motor examination was normal. He said her range of motion was slightly limited with pinching pain and muscle guarding near the end-range on the right. On March 22, 2013, Dr. Marshall said Plaintiff was progressing overall and her treatments were helping. (A.R. 23.)

On June 7, 2013, progress records from San Diego Spine and Rehabilitation reported the results from a MRI of the cervical spine showing a normal cervical

cord size. (A.R. 24.) The cervical medullary junction was normal with moderate thecal sac at the C5-C6 and C6-C7, mild bilateral foraminal stenosis, mild degenerative changes of the upper thoracic motion, and mild annular bulging and unconvertebral spurring at the C4-C5 level. (A.R. 24.)

On May 28, 2013, Damion J. Valleta, D.O., performed an orthopedics physical examination of Plaintiff who had complaints of neck and right shoulder pain. To Dr. Valleta, Plaintiff said she was involved in a motor vehicle accident in September 2011 and was injured when she was rear ended as she was backing out of a driveway. (A.R. 24.) Plaintiff complained of having pain in her neck that radiated into the right shoulder down into her right hand and fingers. (A.R. 24.) She complained of having stiffness and decreased range of motion in the neck in all directions. An MRI of the shoulder without contrast was performed that revealed partial thickness tears involving the supraspinatus and subscapularis in the setting of rotator cuff tendinosis, moderate AC joint arthrosis, and possible degenerative tear. (A.R. 24.) On October 22, 2013, a physical examination was performed that revealed Plaintiff had a full and painless range of motion of the thoracic and lumbar spine with normal stability, strength and tone. A special test of the right shoulder showed positive Hawkins sign. Otherwise, special tests were negative. (A.R. 24.)

On October 3, 2013, Kamshad Ralszadeh, M.D., examined Plaintiff who had complaints of ongoing neck pain, low back pain and buttocks pain due to an injury to her back when she was rear ended at approximately five miles per hour. (A.R. 24.) Upon physical examination, Plaintiff was able to heel to toe walk and had a negative straight leg raise but she had tenderness on palpation of the cervical paraspinal muscle region. (A.R. 24.) Plaintiff's range of motion of the neck was 40/50 flexion and 50/60 extension, lateral bending 40/40 and rotation 80/80. She had 50/60 extension of the lumbar range of motion, flexion 50/60, extension 15/25 and lateral bending 20/25. (A.R. 24.) Range of motion in her wrist and fingers were

without pain. Dr. Ralszadeh said Plaintiff had normal rapid alternating hand movements, that the shoulder impingement test was negative, and that she had full range of motion at the hips, knees and ankles. (A.R. 24.) Dr. Ralszadeh said that she was able to walk on heels and toes bilaterally. He recommended Plaintiff undergo cervical epidural injections to see if it would improve her tingling, burning, and pain. He said she might be a candidate for surgery but he recommended maximizing non-operative treatment first. (A.R. 24.)

The San Diego Spine and Rehabilitation completed a progress report on September 9, 2013, noting that although Plaintiff said she continued to have some degree of pain all the time that prevented her from participating in sports, hobbies, and social activities, she said she was able to do light home activities by carrying light objects. Plaintiff said that she had a forty percent improvement in her pain since starting physical therapy, that she was sleeping better, and that she was overall satisfied with her treatments. (A.R. 25.)

At the hearing, Plaintiff testified that she last worked as an Administrative Representative at Alvarado Hospital on June 18, 2011, two and a half years before her initial back injury. (A.R. 25.) She testified that she underwent back surgery of the L4-5 due to her first back injury. She testified she injured her back a second time when she was in a motor vehicle accident while backing out of her driveway. She testified that since her motor vehicle accident she continues to have ongoing pain in her back, legs and arms. (A.R. 25.) She testified she had some relief when she was undergoing physical therapy. She also testified she has side effects of constipation and nausea from taking her medications. (A.R. 25.) In terms of Plaintiff's alleged impairments, Plaintiff said she has chronic pain in her back, neck, and in her right shoulder, along with fatigue and weakness, which prevents her from working. (A.R. 25.) However, the ALJ pointed out that Plaintiff does do the dishes, laundry, and grocery shopping and does make beds. Plaintiff said she is able to do housekeeping with the assistance from her husband. (A.R. 25.) The ALJ

confirmed that Plaintiff continues to drive a car. (A.R. 25.)

On May 16, 2012 and December 26, 2012, the State agency physical consultants stated that Plaintiff can lift and carry twenty pounds occasionally and ten pounds frequently, stand and walk six hours of an eight-hour workday and sit six hours of an eight-hour workday, occasionally climb ramps and stairs, ropes and scaffolds, and occasionally balance, stoop, kneel, crouch and crawl. (A.R. 25-26.) The medical consultants said Plaintiff has no manipulative, visual, communicative or environmental limitations. (A.R. 26.) The ALJ gave the state agency medical consultant's physical assessments some weight but ultimately found that Plaintiff is more restricted in standing, walking, and sitting than what State agency's consultants found. (A.R. 26.)

Based on the above assessment, the ALJ concluded that Plaintiff was capable of performing past relevant work as administrative clerk and insurance clerk as this work did not require the performance of work-related activities precluded by Plaintiff's residual functional capacity. (A.R. 26.) The ALJ determined that Plaintiff had not been under a disability as defined in the Social Security Act. (A.R. 26.)

## IV.

## STANDARD OF REVIEW

To qualify for disability benefits under the Social Security Act, an applicant must show that: (1) she suffers from a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of twelve months or more, and (2) the impairment renders the applicant incapable of performing the work that she previously performed or any other substantially gainful employment that exists in the national economy. See 42 U.S.C.A. § 423 (d)(1)(A), (2)(A) (West 2004). An applicant must meet both requirements to be "disabled." Id.

A. Sequential Evaluation of Impairments

The Social Security Regulations outline a five-step process to determine whether an applicant is "disabled." The five steps are as follows: (1) Whether the claimant is presently working in any substantial gainful activity. If so, the claimant is not disabled. If not, the evaluation proceeds to step two. (2) Whether the claimant's impairment is severe. If not, the claimant is not disabled. If so, the evaluation proceeds to step three. (3) Whether the impairment meets or equals a specific impairment listed in the Listing of Impairments. If so, the claimant is disabled. If not, the evaluation proceeds to step four. (4) Whether the claimant is able to do any work she has done in the past. If so, the claimant is not disabled. If not, the evaluation proceeds to step five. (5) Whether the claimant is able to do any other work. If not, the claimant is disabled. Conversely, if the Commissioner can establish there are significant number of jobs in the national economy that the claimant can do, the claimant is not disabled. 20 CFR § 404.1520; see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

B. Judicial Review

Sections 206(g) and 1631(c)(3) of the Social Security Act allow unsuccessful applicants to seek judicial review of the Commissioner's final agency decision. 42 U.S.C.A. §§ 405(g), 1383(c)(3). The scope of judicial review is limited. The Commissioner's final decision should not be disturbed unless: (1) the ALJ's findings are based on legal error or (2) are not supported by substantial evidence in the record as a whole. Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion. See Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility,

resolving conflicts in medical testimony, and for resolving ambiguities." Vasquez v. Astrue, 547 F.3d 1101, 1104 (9th Cir. 2008) (quoting Andrews, 53 F.3d at 1039). Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed. Id. (citation and quotations omitted).

Section 405(g) permits this Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C.A. § 405(g). This matter may also be remanded to the Social Security Administration for further proceedings. Id. Furthermore, "[a] decision of the ALJ will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## V.

## DISCUSSION

Plaintiff argues that the ALJ committed legal error by failing to articulate specific, clear and convincing reasons for finding her subjective complaints not credible. (A.R. 10-1, at 4.)

At the hearing, Plaintiff testified that she experiences pain and numbness in her legs and in her arms. (A.R. 47.) She testified that she has had experiences with pain and numbness since her accident in 2011 and that her symptoms have not really improved. (A.R. 47.) Regarding her medications, Plaintiff testified that she is taking about five or six of them and that they help to a certain degree but the pain never goes away. (A.R. 50.) She said that she experiences constipation and bloating as side effects of medication. (A.R. 50.) Plaintiff also testified that she received epidurals in her shoulder and that the injections gave her some relief for her neck and shoulder strain. (A.R. 51-52.)

Plaintiff also filled out an "Exertional Activities Questionnaire," in which she reported that chronic pain causes her to fatigue easily and that she has difficulty stooping, bending, reaching, and twisting. (A.R. 202 and 205.) She said that the stabbing pain was very distracting and causes difficulty with concentration and thinking. (A.R. 205.) She also relayed that she tries to walk about a half of a mile or

more but that she has to stop often and takes over an hour to complete the walk. (A.R. 202.) She said that she tries not to lift anything because her pain level increases for the next week or weeks if she does lift something. (A.R. 203.) She stated that she requires naps during the day, approximately two to three times a day. (A.R. 204.)

Although Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's subjective complaints of pain, the Court finds that the ALJ did give specific reasons supported by substantial evidence for discounting Plaintiff's subjective testimony claiming disabling pain. "In deciding whether to accept a claimant's subjective symptom testimony, an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). "Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms 'must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged...'" Id. (citations omitted). Once the *Cotton* test is met and "there is no affirmative evidence suggesting she is malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so. The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." Id. at 1283-84 (citations omitted).

Here, the ALJ reasoned that although Plaintiff "alleges she had chronic pain in her back, neck and in her right shoulder, along with fatigue and weakness, which prevents her from working," she nonetheless "has the ability to do the dishes, laundry, grocery shopping, and make beds." (A.R. 25.) Plaintiff also reported that she was "able to do housekeeping with the assistance from her husband" and that "she continues to drive a car" and that she had no pain when driving a car. (A.R. 23, 25.) Moreover, the ALJ pointed out that the objective medical evidence was inconsistent with Plaintiff's claims of disability. (A.R. 22.) For example, on June 7, 2013, progress records from

San Diego Spine and Rehabilitation reported the results from a MRI of the cervical spine showing a normal cervical cord size. (A.R. 24.) The cervical medullary junction was normal with moderate thecal sac at the C5-C6 and C6-C7, mild bilateral foraminal stenosis, mild degenerative changes of the upper thoracic motion, and mild annular bulging and unconvertebral spurring at the C4-C5 level. (A.R. 24.) Also, on October 3, 2013, Kamshad Ralszadeh, M.D., examined Plaintiff, who was able to heel to toe walk and had a negative straight leg raise notwithstanding the tenderness on palpation of the cervical paraspinal muscle region. (A.R. 24.) Plaintiff's range of motion of the neck was 40/50 flexion and 50/60 extension, lateral bending 40/40 and rotation 80/80. She had 50/60 extension of the lumbar range of motion, flexion 50/60, extension 15/25 and lateral bending 20/25. (A.R. 24.) Importantly, none of Plaintiff's treating physicians opined that Plaintiff could not work; rather, the ALJ pointed out that the State Agency physicians who considered the record evidence opined that Plaintiff remained capable of performing work activity. (A.R. 25-26.) State agency physicians Dr. Joel Ross and Dr. A. Lizarraras reviewed the medical and non-medical evidence of record and opined that Plaintiff remained capable of performing a range of light work with occasional postural activities. (A.R. 66-69.) State agency physician Dr. Keith Wahl also reviewed the record evidence and concurred that Plaintiff could perform a range of light work activity. (A.R. 77-79, 82-83.) On May 16, 2012 and December 26, 2012, the State agency physical consultants found Plaintiff can lift and carry twenty pounds occasionally and ten pounds frequently, stand and walk six hours of an eight-hour workday and sit six hours of an eight-hour workday, occasionally climb ramps and stairs, ladders and scaffolds, and occasionally balance, stoop, kneel, crouch, and crawl. (A.R. 26.) Although the ALJ found Plaintiff to be more restricted in standing, walking and sitting than what State agency's consultants found, these physicians' opinions, which were given some weight, do support the ALJ's adverse credibility finding. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) ("In addition, the medical evidence, including Dr. Eather's report and Dr.

Neville's report – which both found [claimant] could perform a limited range of work – support the ALJ's credibility determination."). Although Plaintiff argues that her daily routine was not a "complete" description of her activities, and that her activities were in fact limited by her impairments, the ALJ found multiple severe impairments and correspondingly assessed a heavily restricted RFC to less than a full range of light work at the sedentary level of exertion. (A.R. 22.) Thus, this Court recommends that the Commissioner's final decision be upheld as supported by substantial evidence and free from reversible legal error.

## VI.
## CONCLUSION

For the aforementioned reasons, the Court recommends **DENYING** Plaintiff's Motion for Summary Judgment and **GRANTING** Defendant's Cross-Motion for Summary Judgment.

This Report and Recommendation is submitted to the Honorable William Q. Hayes, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before **May 22, 2017**. The document should be captioned "Objections to Report and Recommendation." Any reply to the Objections shall be served and filed on or before **June 2, 2017**. The parties are advised that failure to file objections within the specific time may waive the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED**.

DATE: May 5, 2017

Peter C. Lewis
U.S. Magistrate Judge
United States District Court